# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **UNITED STATES OF AMERCA,** | **Case No. 1:25-CR-574** |
| **Plaintiff,** | |
| **-vs-** | |
| | **JUDGE PAMELA A. BARKER** |
| **DIONTE DYKES,** | |
| **Defendant.** | **MEMORANDUM OPINION & ORDER** |

This matter is before the Court upon the Motion to Revoke the Order of Release filed by the United States of America on December 15, 2025 ("the Government's Motion"). (Doc. No. 47.) On December 31, 2025, Defendant Dionte Dykes ("Defendant" or "Dykes") filed a Response Motion to the Government's Motion ("Defendant's Response"). (Doc. No. 56.) Although given the opportunity to file a reply in support of the Government's Motion by January 7, 2026, the United States did not do so. Accordingly, the Government's Motion is ripe for a decision. For the reasons set forth below, the Government's Motion is GRANTED.

## I.  Background

On November 20, 2025, the Grand Jury returned an indictment charging eleven defendants, including Dykes, with various drug trafficking offenses related to the distribution of fentanyl, oxycodone and methamphetamine in Cleveland, Ohio. The indictment alleges that the conspiracy obtained pills for distribution in Detroit, where many of the co-conspirators live. Dykes was charged with the following offenses:  1.) Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B) (Count 1); Distribution of Fentanyl, in violation of 21 U.S.C.§ 841(a)(1) and (b)(1)(B) (Count 4); two counts of

Distribution of Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2 (Counts 6 and 7); Distribution of Cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Count 8); Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 10); and six counts of Use of a Communications Facility to Facilitate a Felony Drug Offense, in violation of 21 U.S.C. § 843(b) (Counts 11 through 16).  (Doc. No. 1.)

On December 3, 2025, Dykes was arrested in the Eastern District of Michigan and had his initial appearance before that Court.  The Government moved for detention and on December 5, 2025, the Magistrate Judge held a detention hearing for Dykes and then ordered Dykes released on bond. That same day, the Government filed a Motion to Stay the Magistrate Judge's release order, which this Court granted.  (Doc. Nos. 21, 22.)  On December 15, 2025, the Government's Motion was filed and on December 16, 2025, this Court appointed counsel to represent Dykes, and after seeking an extension of time within which to respond to the Government's Motion, counsel for Dykes filed Defendant's Response on December 31, 2025.  The Government requests that this Court review the Magistrate Judge's determination, revoke the order, and order Dykes detained pending trial in the Northern District of Ohio.  (Doc. No. 47, PageID # 369.)  Dykes requests that this Court deny the Government's Motion and order him released with conditions.  (Doc. No. 56, PageID # 410.)

## II.  Law and Analysis

18  U.S.C. § 3145(a)(1) provides in relevant part as follows:

> If a person is ordered released by a magistrate judge, *** the attorney for the government may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the conditions of release.  The motion shall be determined promptly.

District courts exercise a *de novo* review of a magistrate judge's release or detention order. *United States v. Fitzhugh*, 2016 WL 4727480 (E.D. Mich. Sept. 12, 2016 (citations omitted); *United States v.*

2

*Eckenrode*, 2013 WL 257052 (N.D.Ohio Jan. 23, 2013) ("A District Court reviews the release order of a Magistrate Judge *de novo*.")

Title 18 U.S.C. § 3142 "provides the framework for the district court's analysis as to whether release pending trial is proper." *United States v. Williams*, 2020 WL 2529356 (E.D.Tenn. May 18, 2020) (citing *United States v. Webb*, 238 F.3d 426, at *2 (6th Cir. 2000) (table opinion). "The ultimate touchstone of this analysis is 'whether there are conditions of release that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community.' § 3142(g)." *Id.* Risk of flight must be proved by a preponderance of the evidence; dangerousness must be proved by clear and convincing evidence. *United States v. Hinton*, 113 A. App'x 76, 77 (6th Cir. 2004).

There is a "rebuttable presumption" that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community, i.e., a presumption that the defendant should be detained, when there is probable cause to believe that the defendant has committed an offense under the Controlled Substances Act that carries a maximum term of imprisonment of ten years or more or has committed certain firearms offenses. 18 U.S.C. § 3142(e)(3)(A) & (B). Dykes is charged with offenses that carry a mandatory minimum five-year sentence and a maximum forty-year sentence and therefore, the parties agree, and the Court finds that there is a rebuttable presumption that no condition or combination of conditions will reasonably assure Dykes's appearance as required and the safety of the community. 18 U.S.C. § 3142(e)(3).

According to the Sixth Circuit:

*** [S]ection 3142(e)(3)'s presumption in favor of detention imposes only a "burden of production" on the defendant, and the government retains the "burden of persuasion." *See, e.g., United States v. Mercedes,* 254 F.3d 433, 436 (2d Cir.2001); *United States v. Portes,* 786 F.2d 758, 764 (7th Cir.1985). A defendant satisfies his burden of production when he "com[es] forward with evidence that he does not pose a danger to the community or a risk of flight." *Mercedes,* 254 F.3d at 436. Although a defendant's burden of production "is not heavy," he must introduce at least some evidence. *United States v. Stricklin,* 932 F.2d 1353, 1355 (10th Cir.1991); *see also United States v. Rodriguez,* 950

F.2d 85, 88 (2d Cir.1991) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption.").

Even when a defendant satisfies his burden of production, however, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Mercedes,* 254 F.3d at 436. The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial. *See United States v. Jessup,* 757 F.2d 378, 384 (1st Cir.1985), abrogated on other grounds by *United States v. O'Brien,* 895 F.2d 810 (1st Cir.1990), ("Congress intended magistrates and judges, who typically focus only upon the particular cases **\*946** before them, to take account of the more general facts that Congress found"); *see also United States v. Dominguez,* 783 F.2d 702, 707 (7th Cir.1986) ("[T]he presumption of dangerousness ... represents Congressional findings that certain offenders ... are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions."). To rebut the presumption, therefore, a defendant should "present all the special features of his case" that take it outside "the congressional paradigm [.]" *Jessup,* 757 F.2d at 387.

Regardless of whether the presumption applies, the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community. In determining whether the government has met that burden of persuasion, the court must consider certain factors:
(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, ... a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including—
(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release....
18 U.S.C. § 3142(g). However, consideration of these factors shall not be construed to modify or limit the presumption of innocence.  18 U.S.C. § 3142(j).

*United States v. Stone*, 608 F.3d 939, 945-46(6th Cir. 2010).

4

Before proceeding with its analysis, the Court will summarize the information set forth in the Pretrial Services Report prepared on December 3, 2025 ("PSR") as well as an InterCourt Memorandum dated January 6, 2026, and directed to Magistrate Judge Jonathan D. Greenberg in anticipation of and for purposes of the arraignment that Judge Greenberg ("the Memorandum") conducted on January 8, 2026. (Doc. No. 58-1; January 8, 2026 Minutes of Proceedings.)  The PSR indicates that Dykes was interviewed, and verifications were obtained from his mother and the defendant's demographic information was verified via an Accurint inquiry.  The PSR provides the following relevant information.  Dykes, who is 31 years old, married, and has three children, is a native of Michigan but rents his residence that he shares with family friends on Liberty Street in Mentor, Ohio.  Dykes reported that his family ties to the Eastern District of Michigan consist of his wife[1], mother, two brothers, two sisters, and two minor children, and that his family ties to the Northern District of Ohio consist of one brother and one child.  Thus, Dykes has far more ties to the Eastern District of Michigan than to the Northern District of Ohio.

Indeed, Dykes reported that prior to living at the Mentor, Ohio address for the last two years, he had lived with his wife and child in Detroit, Michigan. Dykes has not been issued a passport, has never been issued a Michigan Enhanced License and has never traveled outside the country.  His license status was verified via an inquiry of the Michigan Secretary of State.  His mother relayed a willingness to assist monetarily with bond, provide support to the defendant, and as act as a third-party custodian if deemed necessary by the Court but her suitability has not been verified by Pretrial Services.  Indeed, Defendant's mother lives in the Eastern District of Michigan or outside the Northern District of Ohio.

According to the PSR, Dykes's self-reported employment history is limited to two months of employment as a full-time housekeeper for the Beachwood Commons senior assisted living facility in

---

[1] Dykes's wife, Raveona Carter, is a co-defendant in this case.  (PSR, page 2.)

Beachwood, Ohio beginning in October 2025 and earning $4500 monthly, and two months of working as a prep cook in Detroit, Michigan for his sister's restaurant.  So, at the detention hearing held on December 5, 2025, Defendant, although 31 years old, reported that he had been employed for only four months during his lifetime.  Dykes reported and his mother confirmed and concurred, respectively, that he is not suffering from any physical ailments and takes no medication, and he has no history or present concern regarding his mental health.  Dykes did disclose that he is an active marijuana user and smokes twice per week and occasionally consumes alcohol.

Dykes's criminal history includes the following.  In 2012, Dykes was charged with Misdemeanor Possession of Marijuana, failed to appear at his arraignment, and was ultimately convicted; he was convicted again of Misdemeanor Possession of a Controlled Substance; he was convicted of Misdemeanor Obstructing Official Business - Hamper or Impede Public Official; and he was convicted of Felony Trafficking in Drugs – Sell or Offer to Sell and Felony Controlled Substances – Delivery/Manufacture of Narcotics.  After being discharged from Probation imposed because of this felony conviction on 12/17/2024, Dykes was then convicted of Carrying Concealed Weapon and Possession of Marijuana on 12/10/2015 and was discharged from probation on 12/22/2016.  Finally, on April 24, 2018, Dykes was convicted of Felony Controlled Substance – Delivery/Manufacture of Narcotics, 50-449 Grams (Count 1) and Weapons Felony Firearm (Count 2) and sentenced to serve 78-130 Months on Count 1 and 2 years on Count 2.  Dykes was released from custody on April 21, 2023.

The conspiracy charged in the Indictment allegedly began on August 9, 2023 or less than four months after Dykes was released from custody.  And while in the Government's Motion, the United States notes that after he was released from custody on April 21, 2023, Dykes "quickly went back to drug trafficking, giving rise to the charges in this case, in October 2023," the Court notes that in paragraph 6 of the Indictment, it is alleged that at the same apartment where controlled substances were allegedly sold

6

on August 9, 2023 and September 5, 2023 by alleged co-conspirators, on September 12, 2023 an alleged co-conspirator allegedly called another alleged co-conspirator to ask Dykes if he wanted to sell 200 fentanyl pills and it is alleged that co-defendant  "Bassett communicated on behalf of" and conveyed a message from Dykes to co-defendant Hearns.  (Doc. No. 1, PageID #s 90-91, ¶¶ 4-6.)

The PSR writer acknowledged having concerns regarding Dykes's risk of non-appearance because of his current substance use and history of appearance failure, minimal employment history, and multi-state criminal history, but believed that conditions may be imposed to "ameliorate these risks." (PSR, page 5.)  The PSR writer acknowledged having concerns regarding Dykes's risk of danger to the community due to the nature and seriousness of the alleged offenses in conjunction with his pattern of similar criminal activity to include drug distribution and weapons-related offenses but believed that conditions may be imposed to "mitigate these risks."  (*Id.*)  In the Memorandum, the U.S. Pretrial Services and Probation Office for the Northern District of Ohio, through its Pretrial Services Officer, represented the following:  "The undersigned officer has reviewed the defendant's pretrial services report completed in the Eastern District of Michigan.  Pretrial Services respectfully disagrees with the recommendation of Pretrial Services in the Eastern District of Michigan and requests the defendant be detained for the duration of the instant case."  (Doc. No. 58-1, PageID # 450.)

The Government asserts that at the detention hearing and because he relied only on references to his family ties and his employment, Dykes failed to rebut the presumption with regard to community safety and risk of flight.  Specifically, the Government argues that the only arguments made at the detention hearing were that Dykes's address is on Liberty Street in Mentor, Ohio, he has been employed for two months at an assisted living facility in Beachwood, Ohio, and Dykes has no history of failing to appear for court appearances, although the Government correctly notes that that the Pretrial Services Report shows that Dykes had one failure to appear in 2012.  (Doc. No. 47, PageID # 371.)

7

According to the Government, at the detention hearing, "the defendant noted that he has family ties and a residence to live in, which goes to his likelihood to appear, but did nothing to address the dangerous drug dealing conduct at the heart of his current offenses." (*Id.*)  The Government acknowledges that family ties and a residence to live in "go[] to his likelihood to appear, but [do] nothing to address the dangerous drug dealing conduct at the heart of his current offenses." (*Id.*)  The Government argues and properly cites *United States v. Mercedes*, 254 F.3d at 436-37, and *United States v. Gray*, 20 F. App'x 473, 475 (6th Cir. 2001) for its argument that family ties and a residence do not outweigh the presumption of dangerousness.  The Government contends that this Court's analysis should end here because Dykes did not meet his burden of production, and the Magistrate Judge did not cite any evidence that rebutted the presumption of dangerousness.

Defendant argues that the presumption of detention has been rebutted in this case, citing to the fact that he is 31 years old, he has "some criminal history" that includes a felony that was more than eight (8) years ago but does not include crimes of violence, he has stable employment "for the past several months" and he has "never been charged with failing to appear." (Doc. No. 56, PageID # 423.)  The Court would note that although the last felonies Dykes had been convicted of – drug trafficking and a firearm offenses - occurred more than eight (8) years ago, he was just released from a prison term imposed for those felonies less than four (4) months before the drug trafficking conspiracy with which he is charged allegedly began and less than five (5) months after the date on which Dykes is alleged to have been contacted or made contact with alleged co-defendants/conspirators concerning drug transactions. According to the PSR, Dykes reported his "stable employment" as being from October 2025 until his appearance on December 5, 2025.  However, Defendant has submitted an email from Ashley Sarota, Executive Director for Beachwood Commons assisted living who represents that Dykes has been a

8

housekeeper at the facility for 6 months and "has shown up for every shift 3-5 days a week."[2]  (Doc. No. 56-1, PageID # 427.)  The email does demonstrate that Dykes could return to employment at Beachwood Commons if he is released but it does not do anything to rebut the presumption of dangerousness.  And finally, contrary to Defendant's representation, Dykes did fail to appear for arraignment and a summons was issued on 5/9/2012.  (PSR, p. 4.)

Defendant also submitted several character reference letters to demonstrate his "lack of danger to the community and flight risk."  (Doc. No. 56, PageID # 423.)  The first letter is from Aishah Bowler-Dixon who represents that Defendant "is a respectful, family-oriented individual that is not a flight risk or a danger to our community" and contends that he "has every reason to remain here and see his legal process through since [h]is support system and responsibilities are here."[3]  (Doc. No. 56-2, PageID # 428.)  Ms. Dixon does not indicate how she is related to or knows Dykes but it could be that she is married to Dykes's brother who, per the PSR, is a family tie to him in the Northern District of Ohio.  Regardless, while this letter demonstrates her support of Dykes and her opinion of his character, it does not demonstrate that Dykes does not pose a danger to the community.

The second letter is from Darnell Dykes, Defendant's mother.  Aside from representing that Defendant is a loving son who has shown care and concern for his family, Ms. Dykes represents that she has ongoing heart-related health issues and is under a doctor's care and that "having my son home would provide me with emotional support and assistance that would greatly help me manage my condition." (Doc. No. 56-3, PageID # 429.)  However, Ms. Dykes resides in the Eastern District of Michigan and not within the Northern District of Ohio and arguably, Dykes's two brothers and two sisters who live in the Eastern District of Michigan can provide such support.  Regardless, while it does demonstrate family

---

[2] The Court can construe this representation as indicating that Dykes may work part-time, as opposed to full-time.
[3] Again, the Court notes that Dykes has a greater number of family ties, to include his mother, two (2) brothers, two (2) sisters, and two (2) minor children who live in the Eastern District of Michigan, or outside the Northern District of Ohio.

support, this letter does not demonstrate that Dykes does not pose a danger to the community.  Indeed, it is worth noting that the Indictment alleges that Dykes was using his mother's residence in Detroit as a location where he stored drugs and/or drug proceeds.

The third letter is from Deijanae Tunstall who works in food service at the Cleveland Clinic and who has known Dykes for three years and is the aunt of one of Dykes's minor children.  (Doc. No. 56-4.) She represents that for the three years she has known him, Dykes has been a provider for his family and is deserving of the opportunity to be released.  (*Id.*)  The fourth letter is from Dykes's sister, Keana Dykes, who writes to apprise the Court of the strong family support that Dykes has.  (Doc. No. 56-5.)  The fifth letter is from Mrs. Rhonda King-Payton who, along with her family, operates a program that helps serve the homeless in the community, and she represents that she has known Dykes for 30 years, and asks that the Court allow him to be released on bond in part because that she knows "he isn't a danger to the community."   She does not explain how it is that she "knows" Dykes is not a danger to the community. (Doc. No. 56-6, PageID # 435.)

Since these three letters, and indeed all six letters submitted by Dykes demonstrate family and friend support and the opportunity to resume his employment if Dykes is released, the Court finds that Dykes has satisfied his burden of production that he is not a flight risk but the rebutted presumption of a risk of flight still has some evidentiary weight in evaluating whether he should be detained.  Importantly, however, these six letters when considered in conjunction with the information adduced at the detention hearing and the information set forth in the PSR do not constitute evidence contrary to the presumed fact that he is a danger to the community.

Arguably in support of the contention that Dykes has satisfied his burden of production that he is not a danger to the community, Defendant cites to the transcript of the December 5, 2025 detention hearing during which the Magistrate Judge noted that there is no indication that Dykes has engaged in any similar

10

criminal activity since the alleged conclusion of the conspiracy in April 2024. (Doc. No. 56, PageID # 423, citing Hrg. T. pgs 21 and 22.) While that may be true, this Court finds that this observation is insufficient to satisfy Defendant's burden of production that he is not a danger to the community. Indeed, the Pretrial Services Officer that prepared the PSR had concerns regarding Dykes's danger to the community (and his risk of non-appearance) and the Pretrial Services Officer who prepared the Memorandum represented that the U.S. Pretrial Services and Probation Officer for the Northern District of Ohio represented that Dykes should be detained during the instant federal offense. And, what this Court considers more telling is less than four (4) months and less than five (5) months, respectively, after his release from prison for prior felony offenses, specifically drug trafficking and firearm offenses, the conspiracy he is alleged to have participated in began and Dykes allegedly was contacted by and contacted his alleged co-conspirators/defendants.

Accordingly, this Court concludes that Dykes has failed to rebut the presumption of dangerousness. And even though Dykes met his burden of production that he is not a flight risk, that presumption does not vanish. Indeed, when giving it some "evidentiary weight", together with finding that Dykes has not rebutted the presumption of dangerousness, this Court finds that Defendant must be detained.

Indeed, even though not required to engage in evaluating the § 3142 factors because it has found that Defendant has not rebutted the presumption of dangerousness, and to more fully explain the nature of the "evidentiary weight" it is still giving the rebutted presumption of risk of flight, the Court has evaluated each of them and concludes as follows. The nature and circumstances of the offenses, to include the potential substantial sentences, support the conclusion that Dykes poses a danger to the community. The weight of the evidence of dangerousness, to include Dykes's criminal history and his return to drug

11

trafficking and weapon offenses in such a short time after being released from prison for the same types of crimes, support the conclusion that Dykes poses a danger to the community.

Although some of the eleven factors that the Court must evaluate in determining whether Dykes's history and characteristics weigh in favor of or against detention, the Court finds that the majority of them weigh in favor of detention.  As for Dykes's character, his family members and friend have represented that Dykes supports his family and community, and is caring and helpful, but this is countered somewhat by his prior convictions that include drug use, drug trafficking and weapons offenses.  Accordingly, this factor is neutral.   As for his physical and mental state, Dykes and his mother reported that he has no physical ailments or mental health issues, so this factor is a positive one for Dykes.  As for his family ties, he does have many although most of them are in Michigan and not Ohio.  But the positive of having these family ties is countered by the fact that it was at his mother's home in Detroit that it is alleged that Dykes stored drugs and/or drug proceeds, and his wife is a co-defendant in this case. Indeed, these family ties have not helped to make him a law-abiding citizen.

As for his employment, since the detention hearing, it has been verified by the Executive Director for Beachwood Commons assisted living that he has been employed as a housekeeper for six months and can return to that position, and per the PSR, he makes $4500 monthly.  So, while the factors of employment and financial resources weigh positively for Dykes, countering this is the fact that this is only the second job that Dykes has held, with his first being for two months at a restaurant owned by his sister.  As for his length of time in the Northern District of Ohio, it is limited to two years; he is a native of Michigan and most of his family lives there.  Indeed, he rents his residence with "family friends" but there is no information as to the identity of these family are friends.  Past conduct, specifically his criminal history includes felony convictions for drug trafficking and weapons, and he has misdemeanor convictions.  He does have a history of marijuana use twice a

week, as he is a self-admitted "active marijuana user."  He does have a history of failing to appear for his arraignment in 2012.

Accordingly, the Court finds that the Government has sustained its burden of demonstrating by clear and convincing evidence that no release conditions will reasonably assure the safety of the community.  Defendant argues that the Government has not sustained its burden and submits that conditions enumerated in Defendant's Opposition will reasonably assure Dykes's appearance and the safety of the community, to include electronic monitoring, GPS monitoring, or home detention (to allow for going to work).  (Doc. No. 56, PageID #s 424-25.)  The Court disagrees.  While the location monitoring that he proposes may offer useful information about where Dykes is, it provides little useful information about what he is doing, and the ready accessibility of smart phones and digital communication devices would make it all too easy for him to resume his involvement in the trafficking of controlled substances without detection.

### III.    Conclusion

This Court has reviewed the Magistrate Judge's release order and for the reasons stated above, finds that there are no conditions or combination of conditions that would reasonably assure the safety of the community.  Accordingly, the Court revokes the Magistrate Judge's release order, and orders that Defendant Dionte Dykes be detained pending trial in the Northern District of Ohio.


**IT IS SO ORDERED.**


                                          s/Pamela A. Barker
                                          PAMELA A. BARKER
Date:  January 12, 2026                   U. S. DISTRICT JUDGE

13